IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REGINA FERGUSON, | No. 2:13-cv-2344-WBS-CMK |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATION |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pending before the court are plaintiff's motion for summary judgment (Doc. 16) and defendant's cross-motion for summary judgment (Doc. 18). For the reasons discussed below, the undersigned will recommend plaintiff's motion for summary judgment be denied and the Commissioner's cross-motion for summary judgment be granted.

/ / /

/ / /

/ / /

/ / /

1

# I. PROCEDURAL HISTORY[1]

Plaintiff was found disabled as of January 9, 2003, due to disabilities including affective (mood) disorder and mental retardation (Certified administrative record ("CAR") 56, 61, 74-76, 233-55, ). On January 10, 2012, plaintiff's case was reviewed, and it was determined that she was no longer disabled. (CAR 62-73, 77-80, 277-79). Plaintiff's request for reconsideration was denied. Plaintiff requested an administrative hearing, which was held on May 14, 2013, before Administrative Law Judge ("ALJ") Daniel G. Heely. In a June 26, 2013, decision, the ALJ concluded that plaintiff is no longer disabled[2] based on the following findings:

> 1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated July 10, 2003.

---

[1] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[2] The Commissioner must follow different sequential steps to review whether, once the claimant has been found eligible for SSI benefits, his medical condition improves sufficiently to cease his disability payments. See 20 C.F.R. §§ 416.994(b)(5). At the first step, the Commissioner determines whether the severity of the claimant's impairment(s) meet or equal one of the listed impairments acknowledged to preclude substantial gainful activity. 20 C.F.R. § 416.994(b)(5)(I); 20 C.F.R. Pt. 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant will remain eligible for disability benefits. 20 C.F.R. § 416.994(b)(5)(I). If the claimant does not satisfy step one, the Commissioner determines at step two whether the claimant's condition has improved, i.e., it is less severe. 20 C.F.R. § 416.994(b)(5)(ii). At step three, the Commissioner ascertains whether the medical improvement is related to an increase in the claimant's RFC "based on the impairment(s) at the time of the most recent favorable medical determination." 20 C.F.R. § 416.994(b)(5)(iii). If the Commissioner concludes that claimant has not experienced any medical improvement or that the medical improvement does not comply with § 416.994(b)(5)(iii), he continues to step four. 20 C.F.R. § 416.994(b)(5)(iv). At step four, if none of the exceptions under § 416.994(b)(3) or (b)(4) apply, the claimant's disability benefits will continue. Id.; see 20 C.F.R. §§ 416.994(b)(3) or (4). If no exceptions apply, the Commissioner continues to step five and determines whether all of the claimant's combined impairments are severe and how they impact claimant's ability to function. 20 C.F.R. § 416.994(b)(5)(v). If the step five findings indicate that, considering the claimant's combined impairments, he can perform basic work, he no longer will be deemed disabled. Id. If, at step five, the Commissioner determines that claimant's (b)(5)(iii) RFC precludes him from working, the Commissioner continues to step six and assesses whether claimant's RFC, based on his current impairments, enables claimant to perform a job. 20 C.F.R. §§ 416.994(b)(5)(v) and (vi). At step seven, claimant's disability benefits will end if, in light of his RFC, age, education, and past work experience, he can do other work in the economy. 20 C.F.R. § 416.994(b)(5)(vii).

2. At the time of the CPD, the claimant had the following medically determinable impairments: mood disorder and mental retardation. These impairments were found to result in the residual functional capacity to markedly limited her ability to perform activities within a schedule, maintain attendance, sustain ordinary routine without special supervision, and sustain persistence and pace to complete an 8-hour workday or 40-hour workweek.

3. The medical evidence establishes that, as of January 1, 2012, the claimant had the following medically determinable impairments: borderline intellectual functioning, affective disorder, shoulder pain, and neck pain. These are the claimant's current impairments.

4. Since January 1, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.925 and 416.926).

5. Medical improvement occurred as of January 1, 2012 (20 CFR 416.994(b)(1)(i)).

6. As of January 1, 2012, the impairments present at the time of the CPD had decreased in medical severity to the point where the claimant had the residual functional capacity to carry out simple, routine, repetitive tasks.

7. The claimant's medical improvement is related to the ability to work because it has resulted in an increase in the claimant's residual functional capacity (20 CFR 416.994(b)(2)(iv)(B)).

8. Beginning on January 1, 2012, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 416.994(b)(5)(v)).

9. Beginning on January 1, 2012, based on the current impairments, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can sit, stand, and walk six hours out of eight hours each with normal breaks; she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps or stairs; she cannot work around hazards such as moving, dangerous machinery and unprotected heights; and she is limited [to] simple, routine, repetitive tasks.

10. Beginning on January 1, 2012, the claimant has been capable of performing past relevant work as a kitchen helper. This work has not required the performance of work-related activities precluded by the claimant's residual functional capacity based on the impairments present as of January 1, 2012 (20 CFR 416.965).

///

| | | |
|---|---|---|
| 1 | 11. | The claimant's disability ended on January 1, 2012, and the claimant has not become disabled again since that date (20 CFR 416.994(b)(5)(vi)). |
| 2 | | |

(CAR 11-21). After the Appeals Council declined review on September 12, 2013, this appeal followed.

## II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III. DISCUSSION

Plaintiff argues the ALJ failed to properly assess and find plaintiff met or equaled the criteria under 12.05 in the Listing of Impairments. Specifically, she argues the ALJ failed to

use or even discuss a prior, lower IQ score which indicate she meets the Listing 12.05B criteria.

In 2003, plaintiff was found to be disabled due to mental retardation and affective mood disorder.  In 2011, pursuant to 20 C.F.R. § 416.988 et seq., plaintiff's status was reviewed to determine whether she continued to be disabled.  She was found no longer disabled, and her benefits were terminated on January 1, 2012.  (CAR 77-80).   The decision at issue in this case is the finding that plaintiff was no longer disabled as of January 1, 2012.

The Social Security Regulations "Listing of Impairments" is comprised of impairments to fifteen categories of body systems that are severe enough to preclude a person from performing gainful activity.  Young v. Sullivan, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  Conditions described in the listings are considered so severe that they are irrebuttably presumed disabling. 20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all the requirements of that listing must be met.  Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).

Listing 12.05, which governs mental retardation, explains that:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>     . . .
>     B.  A valid verbal, performance, or full scale IQ of 59 or less;
>     OR
>     C.  A valid verbal, performance, or full scale IQ of 60 though 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function;
>     OR
>     D.  A valid verbal, performance, or full sale IQ of 60 through 70, resulting in at least two of the following:
>         1.  Marked restriction of activities of daily living; or

///

5

> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 CFR, Part 404, Subpart P, Appendix 1.

Here, as to plaintiff's mental impairments the ALJ found she did not meet or equal the criteria of Listing 12.05:

> Listing 12.05A requires mental incapacity evidenced by dependence upon others for personal needs and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded. Listing 12.05B requires a valid verbal, performance or full scale IQ of 59 or less. Listing 12.05C requires a valid verbal performance or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. Listing 12.05D requires a valid verbal, performance or full scale IQ of 60 through 70 resulting in marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation. The record is devoid of such evidence. Thus, the evidence does not establish the severity required of Listing 12.05.

(CAR 14).

The ALJ also discussed the current medical evidence as to plaintiff's mental impairments:

> Turning to the claimant's mental impairments, the claimant's sparse mental health treatment is not generally received [sic] the type of medical treatment expected for a disabled individual. The claimant has no formal mental health treatment records, and she only received medical management with her primary care physician (Exhibit 21F). The evidence also indicates the claimant has no history of psychiatric hospitalization, and she has never seen a counselor or other mental health professional in the past. This supports finding the claimant could at least perform simple, repetitive, routine tasks. This objective evidence is further supported by the medical opinions of record which are discussed below.
>
> A psychological consultative examination by David C. Richwerger, Ph.D., on December 22, 2011 supports the finding herein. At the examination, the claimant denied that she had any mental or emotion problems, but she later stated she had some difficulty with

1   memory.  The claimant reported she graduated from high school
    and did not attend special education.  She reported she is not
2   receiving mental health treatment (Exhibit 8F, pp. 2-3).  The
    mental status examination showed she understood simple
3   instructions without difficulty, her mood was normal, and her
    concentration was average.  She scored in the low average to
4   borderline range on most memory tasks.  Valid psychometric
    testing showed borderline range scores with a full scale IQ of 73
5   (Exhibit 8F, pp. 406).

6   Based on the examination, Dr. Richwerger diagnosed borderline
    intellectual functioning, and he assessed a Global Assessment of
7   Functioning (GAF) score of 61-70[], indicating mild symptoms or
    difficulty functioning.  He opined the claimant had marked
8   impairment in her ability to perform detailed and complex tasks.
    He reported she had slight impairments in the following abilities:
9   performance of work activities on a consistent basis; completion of
    a normal workday or workweek without interruption from a
10  psychiatric condition; understanding and accepting instructions
    from supervisors; and dealing with the usual stresses encountered
11  in competitive work.  The doctor indicated the claimant did not
    have any impairment in the rest of the listed mental abilities
12  (Exhibit 8F, pp. 7-8).

13  (CAR 18-19).

14          In summary, the evidence as a whole supports the residual
            functional capacity assessed by this decision.  The objective
15          findings, treatment records, consultative examinations, and State
            Agency consultants' opinions, support finding the claimant does
16          not continue to be disabled.  The claimant has symptoms from her
            borderline intellectual functioning, affective disorder, shoulder
17          pain, and neck pain.  Consideration is given to these symptoms in
            the residual functional capacity limitations adopted herein.  The
18          undersigned finds the claimant has not been deprived of the ability
            to perform work subject to the residual functional capacity assessed
19          by this decision for any 12-month period since January 1, 2012.

20  (CAR 19).

21          In addition to Dr. Richwerger's examination and testing, the evidence in the

22  record includes a prior evaluation was performed on plaintiff in 2003 by Jennifer Poirier, Ph.D.

23  During the 2003 evaluation, plaintiff reported difficulties with memory loss and depressive

24  symptoms.  Based on her performance on the WAIS-III, plaintiff was assessed with an FSIQ of

25  57.  Dr. Poirier found plaintiff's abilities to be estimated within the Extremely Low range, and

26  diagnosed plaintiff with major depressive disorder and mild mental retardation.  (CAR 233-36).

7

This evaluation was the basis for the 2003 disability determination.

Plaintiff contends that the ALJ erred by failing to use the 2003 lower IQ score in determining whether plaintiff continues to be disabled. She argues that the regulations require the use of the lowest IQ score when there are multiple scores present. The regulation she specifically refers to provides:

> Due to such factors as differing means and standard deviations, identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning. The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of lamination reflected by the IQ scores. *In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05*.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(c) (emphasis added).

Plaintiff seeks to extend this regulation to include IQ scores that have been obtained through different tests performed almost 10 years apart. That is not what the regulation refers to. The specific language of the regulation provides that where multiple scores are provided from a single test, such as where a verbal, performance and full scale IQs are given, the lowest of those scores will be used. Here, plaintiff received various IQ scores on the tests performed. Dr. Richwerger performed the Wechsler Adult Intelligence Scale, IV (WAIS-IV), wherein plaintiff's received a verbal comprehension score of 74, perceptual reasoning score of 75, working memory score of 83, processing speed score of 81, and full scale IQ score of 73. Therefore, the lowest of those scores (the full scale IQ score of 73) is in fact what the ALJ used in evaluating plaintiff.

Plaintiff asks this court to extend that regulation to all testing over all time. This extension is extreme. Indeed, the regulations themselves provide for a review of continuing disabilities, with the exception of very few conditions. A low IQ is not one of the exceptions. A

permanent impairment where no medical improvement is expected are those conditions that are at least static, but more likely progressively disabling. The examples provided in the regulation include Parkinsonian Syndrom, Amyotrophic Lateral Sclerosis, Diffuse pulmonary fibrosis, and amputation of leg at hip. See 20 C.F.R. § 416.990(c). Mental deficiencies is not included as an example, nor is there any indication that it would not be subject to review. As mental deficiencies are subject to review, it stands to reason that if a new evaluation, such as one nine years later, shows improvement, the improvement in the claimant's impairment can be the basis for finding medical improvement. The out of circuit cases plaintiff cites as support for her position that a person's IQ is generally stable over time, both specifically find it is a rebuttable presumption. Here, that presumption would be rebutted by the 2011 evaluation which clearly shows an increase in plaintiff's abilities. Notably, there is no indication or argument that the 2011 evaluation was invalid.

To the extent plaintiff argues the ALJ erred in not specifically commenting on the prior examination and IQ score, or any conflict resulting therefrom, the undersigned finds the ALJ did not completely ignore that evaluation. It is clear from the record that the ALJ was aware of the prior determination, as he specifically found "the claimant does not continue to be disabled." (CAR 19). He further determined that her "disability ended on January 1, 2012." (CAR 21). The 2003 evaluation supported the prior disability determination. In review of plaintiff's current abilities, it stands to reason the most recent test results would be a more accurate measure, especially given the nine intervening years. In addition, as the ALJ determined plaintiff not disabled as of January 1, 2012, and not before, there is no conflict between the two evaluations. Where there is no actual conflict to resolve, the ALJ was not required to provide reasoning for his resolution thereof. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (holding that the ALJ need not provide reasoning if there is no conflict and the medical findings are accepted). Therefore, the undersigned finds the ALJ's determination is supported by substantial evidence.

Even if the ALJ should have discussed the prior IQ score, the undersigned finds the failure to do so would be harmless.  The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts.  For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless " if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056).  Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony.  Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision.  Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education.  The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion.  See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility.  Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error."  See id. at 1162.  The court articulated the difference between harmless error standards set forth in Stout and Batson as follows:

///

> [T]he relevant inquiry [under the Batson standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error.  In Batson, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record.  We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision.  Likewise, in Stout, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in Stout does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue.  There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.

Carmickle, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ's errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the Stout standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred.  Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the Batson standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

Given the new, valid IQ scores, the undersigned finds under the Stout standard, that no reasonable ALJ would have reached a different conclusion.  The determination that plaintiff was no longer disabled as of January 1, 2012, is supported by substantial evidence.  It was unnecessary for the ALJ to use the prior IQ scores, when the newer evaluation clearly shows significant improvement to the point where plaintiff no longer meets the Listing requirements.  Her IQ of 73 is over the maximum score to qualify her under any of the subsections of Listing 12.05.

### IV.  CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, the undersigned recommends that:

    1.    Plaintiff's motion for summary judgment (Doc. 16) be denied;

    2.    Defendant's cross-motion for summary judgment (Doc. 18 be granted; and

    3.    The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 2, 2015

                                                **CRAIG M. KELLISON**
                                                UNITED STATES MAGISTRATE JUDGE